May it please the Court, Nicole Hodge-Amy appearing on behalf of Appellant Yvonne Hodge. I would like to reserve two minutes for rebuttal. This case comes before the Court of Appeal on a grant of motion for summary judgment. There are a number of acronyms I'll be using. SH refers to civilly handicapped, ESY refers to extended school year, and NSH is non-civilly handicapped. Appellant Mrs. Hodge was subject to age and race-based discrimination when she was denied an opportunity to work in the Oakland Unified School District's extended year program in 2009 and afterwards, and in 2008, the last year that she was allowed to work in the extended school year program. And during that time, she was required to assume the tasks of her instructional assistants or aides and attend to the tasks of diapering the students and toileting her students and being denied resources available to other teachers and necessary for her to teach a class of students with severe handicaps. In this case, there were issues of material fact that were disputed and evidence of pretext. These material – disputed material facts existed, and the Court erred by weighing the evidence by making factual determinations and credibility determinations in reaching its conclusions. What's your best evidence of pretext? My best evidence of pretext, first, the district stated that they did not accept – the district told Mrs. Hodge that they did not accept applications from anyone, only teachers with SH credentials. And they also told her that then, after they had hired all the SH teachers, that they hired substitutes. Well, the defendant, Wesselman, who was the hiring liaison, she testified in deposition that applications were to be given to anyone who was a special ed employee who asked, and that no one was to do background checks on the teachers who had sought an application. Our next greatest evidence is the demographics. The district told Mrs. Hodge that they had only hired SH teachers and teachers with substitute credentials. But the demographics show that, of the 77 teachers, only one person had a substitute credential. The greatest majority of people who were hired had SH credentials. The next greatest number of teachers who were hired had non-severely handicapped teachers, as Mrs. Hodge did. The only difference was that those non-severely handicapped teachers, of the 14 of them, 11 of them were non-severely handicapped. One of them were under 40, and the ones who were over 40 were non-black. There was one person who was 67 years old, and he was black. But everyone else was either young or they were older and non-black. Our next greatest evidence is the district stated that they were not accepting applications in order to be efficient and reduce the number of applications that they had, where Defendant Besselman, the liaison in charge of the hiring for the ESY program, stated that they had more vacancies than applicants, and the California Department of Education also found that the district had so few applicants for the ESY program that they hired almost everyone who had applied. So these were our issues of pretext. And the court found that, the district court found that the court, the district's legitimate purpose in rebuffing Hodge's application was that it didn't accept applications from any person who did not have an SH credential. But no one, there was no evidence to support that. Even the district in their motion for summary judgment included the testimony of Eris Besselman that said she had instructed her staff to give applications to anyone who had asked. So there was no reason for the court to find that the school district was rejecting applications from anyone who did not have an SH credential. Let me ask you about your disparate treatment claim. My understanding is that you have no objection to the hiring of the SH teachers first. Is that right? That is correct. That is what the policy has always been. Okay. So your objection in terms of the disparate treatment claim is that in the process of hiring the MSH or substitute teachers, that discrimination was at the core of that hiring decision. Is that discrimination based upon race or based upon age? Is that correct? Correct. Because the policy and the evidence showed, and it was undisputed, that the severely handicapped teachers mostly all worked during the year. So these people weren't even in the hiring pool. The hiring pool consisted of the people who had not worked during the year in that severely handicapped program. And that would be a list of the non- substitutes or the people who are qualified for special ed, non-severe. So what criteria did Ms. Wesselman, who was head of human resources, use in hiring those people? You're saying race played a part. Right. You're saying age played a part. What was the criteria for her making those decisions? In 2009, after 2009, Eris Wesselman, in her deposition testimony, testified that she just wouldn't ask these individuals if they wanted to work. So these were people who she chose specifically. So she went off and chose whoever she wanted to take these spots? Right. She chose whoever they wanted, and they actually, in her deposition, she actually said, and I'll actually read that to you, but she actually said that once you get to the NSH teachers, that she used the criteria of first in gets hired. In other words, by the timing of the filing of the request, those are the people who got hired. She said, well, here's the question. I'll put it in context. Okay. That if you have five people who had applied for ESY out of the NSH people and you only needed three, then how would they be chosen? And her answer was, by the time, according to the date they put in the letter of intent. So in other words, what she testified to, what the evidence suggests is right, is that she would just look to the date of when they filed the application and that whoever filed first gets the job. Right. Is that not right? That should be what was done, except that in this instance they were telling people like Ms. Hodge that they weren't accepting applications. So if you tell Ms. Hodge you are not accepting applications, then she couldn't be the first one to get it in. So you are correct, because applications, it appears, were accepted. Well, then that raises a question for me about what the nature of your claim is. Are you upset because she was told that she shouldn't apply, or are you upset because she did apply, because she testified that she probably applied and you introduced a document which suggested that something was received by the district. Is that the nature of your claim, that she in fact applied, but that she was not hired for a discriminatory purpose reason? The nature of our claim is that she was, based upon race and age, she was left out of the pool of individuals who told that they were able to apply. Then you're saying that she never applied. No, no. She eventually did go, even though she had been told she couldn't, she went and filled something out and turned it in. So Mrs. Wesselman did say that, you know, first, that's how it should be. I don't have any evidence that that is what happened. I know that Dr. Wesselman did testify at deposition that, or maybe Mr. Rusk had testified that they actually went and asked people. And see, there's a lot of disputed information here from the district staff itself. You know, one person saying that only these people could apply, that only people with SHPD could apply. But then Erickson Wesselman is saying that NSH teachers could give an application, and based on the time stamp, that that's who was hired first. So even in a letter written to Mrs. Hodge by the district's attorney, Martin Kreese, on July 2009, he stated in his letter that it is correct you couldn't apply, because only teachers with the SH credential could be hired. And after those vacancies were filled, then we hired people who had substitute credentials. So there's a lot of conflict information, and when you have that type of conflict. What does that get you to your protected class, though? I mean, let's assume that they just picked people randomly and hired them. That doesn't show discrimination, or doesn't show pretext or discrimination based on age and race. So is it correct to say you don't have any direct evidence of discrimination, but we have to infer it? Is that the case? I believe we have direct evidence of discrimination, which is, let's see here, that plaintiff was qualified for the job in question, but passed over in favor of people who did not have her forbidden characteristics. That may give you to the prima facie case, and let's assume for the sake of argument that they had a system in place that when you finally got down, it was a system of doing it by application date, all right? So then you have to show pretext, that that was simply a pretextual means covering a pretext for covering an age and race discrimination. What do you have for that? Well, the cover-up would be that if you look at the list, it would be ‑‑ if you look at the list of non‑civilian handicapped teachers, with whatever random thing that they used, Mrs. Hodge should have been called. There should have been a teacher's ‑‑ Unless they used the system that was testified to, they did it in order, right? The system that was testified to. In other words, if they simply said we're going to do this, consider it by application date, that's nondiscriminatory, correct? If that had been the ‑‑ if application date had been used, that would be nondiscriminatory. The problem is once you tell people that there is no application and that they cannot apply, then that changes. Right. Well, I guess let me put it in more, I guess, blunt terms. What separates this case from a simple administrative screw‑up that nobody knew what the rules were and they were telling people different things? That's one scenario you have, is that they say, well, they're doing this inconsistently. They're telling people don't apply, do apply, can't apply, so forth. What turns this into a discrimination case, other than what you've told me before? What turns it into a discrimination case is the subsequent letters. When you have a letter from Mr. Crease, the attorney for the district, saying she was correct, you couldn't apply because you didn't have the correct credential. And then you look and you see that they're saying that only SH credentials and subs can apply, and you see there's only one person on there who has a substitute credential. It's the conflicting and inconsistent statements after that gives you an indication that that is not just an administrative mix‑up. You know, and then you have testimony that they were seeking to reduce applications. Of Mr. Rusk, the person most knowledgeable, when he said that they sought to reduce applications because it was inefficient to read them all, that was evidence of pretext, because, you know, the evidence was they didn't have enough people applying. Can I reserve the rest of the time? Yes. Thank you. We'll give you two minutes. Good afternoon, Your Honors. My name is Roy Combs, and I represent the Oakland Unified School District and the other defendants. If it pleases the Court, I will be extremely brief and, of course, will answer any questions that the Court may have. The issue, we believe, that the plaintiff has attempted to raise turns primarily on pretext. The appeal in this case points out, or at least as we read it, identifies three errors that the appellants contend the trial court made here, namely that there was an error in granting summary judgment on her Title VII and ADA claims based on race and age related to the hostile work environment claims. Second, that there was an error in granting summary judgment on the disparate impact claim. And finally, appellants contention here that there was error in granting summary judgment on her disparate treatment claim. The district court, we believe, properly applied the McDonnell-Douglas analysis. The court concluded that a prima facie case was established by the plaintiffs for purposes of summary judgment. The court concluded that the defense had presented evidence that was not disputed showing that there was a legitimate business justification for the processing procedure that the district used in selecting the individuals who worked during ESY, the extended school year. We would admit that process was not as clean or tight as it should have been, but it was a process that was neutral. And then the district court turned to what I think the court's inquiry has been here, where is the evidence of pretext? And in fact, in this case, the complete record below at the trial court is that there is no evidence of pretext. And we would submit, because of that, the district court properly concluded that there was no genuine issue of material dispute regarding pretext. And we still haven't heard that in the appellant's arguments here today. We've heard more accusation, which we understand. But as this court knows quite well, that circumstantial evidence must be substantial and specific in order to overcome a motion for summary judgment. And the trial court pointed to that standard. We think that that is still the standard. Do you agree that Dr. Wesselman applied this approach? That is, once you get past the SH teachers, you go to the NSH teachers, and you use first in, first filing of applications and just follow that in order. Is that what happened here? That is what happened, and that's the state of all of the evidence in the record. Okay. So isn't that a very simple thing to prove? Isn't it very simple to say you've got the 14 people who were hired, you can actually put the dates on which they filed their applications, and you can show that it was one after another, and race and age played no part in this process. Isn't that evidentiary-wise a very simple thing to show? It is. I would agree with that, Your Honor. Was it shown? And the trial court had only that in front of it, and there was no dispute as to any of this. That's the confusing part to me, because I didn't see in the briefs that anybody was referring to the actual process by which Dr. Wesselman made these decisions. And it would seem to me like the basic question. I mean, did she use a purpose which is nondiscriminatory in nature, that is, first one in, first one to get hired? And that didn't seem to be the focus of your brief. Or it doesn't seem to be substantiated in the record that these are the people who were hired, and this was the order in which they were hired. Well, I believe, and I have to concede I don't have that citation to the record in front of me, but that in the record she did testify that she used the first in, first out, and I can't say that's how she phrased it, but she simply used the dates of the applications for purposes of making the hiring determinations and nothing more. I'm just surprised that you didn't use that as the heart of your argument to respond to the allegation that discrimination was at the core of this hiring decision. Well, I gather what you're saying is all we have is her deposition testimony. We don't have the actual applicant's dates of application to prove that that was the process used, right? That's not in the record. That's right. There was substantial discovery. So as I understand, if I understand the plaintiff's argument about pretext, it goes like this, is that you set up a process and you didn't follow it, and that is evidence of pretext. I think that is the plaintiff's, the appellate's argument. Right. So and your argument is simply, well, we had a process. So where does that leave us? Well, I think it's a little more. Because I think you conceded that either it was confusing or wasn't followed or, and I'm not sure what the state of reality is on this from this record. I can't make it out. So can you help me out? Fair enough. I think it's a little more than there was a process. I think the process was described, and it's in the record. Was it followed? And that there was a, for lack of a better phrase, a good faith effort to follow that process. What is lacking is any evidence that race or age or any other protected status had any influence in the implementation of that process. That's what's lacking. And there is no evidence of that. So I understand the Court's hesitation and concern in that area, but in this case there simply is no evidence to show that the process, even though it may have been implemented in a bumpy way, was influenced in any way by the age or race or any other protected status of the appellant or of anyone else, for that matter. All right. Is that it? All right. Thank you. Okay. Thank you. In this case, there are disputed material facts, which is how the applications  involved in the process. We have three different scenarios as to how the composition of the teachers for ESY, the NSH teachers, were found. And then we can look at the list and see that we have teachers that didn't have the credential at all. So to suggest, and those teachers were non-black. So it's not possible that a teacher who doesn't have the credential and who couldn't have applied could have gotten chosen prior to Mrs. Hodge unless there was some type of discriminatory motive. And, you know, we have a teacher, you know, Yvonne Hodge's last name is H. We have a teacher who's 26 years old, her last name is with a Z. So, I mean, even if you went alphabetically, if you went random at some point, there should have been some or of older than 50. We couldn't have gotten to the substitute, the single substitute, unless they had gone through all of the non-severely handicapped teachers. So, you know, the evidence indicates that Mrs. Hodge was intentionally excluded. She had worked 2008. So to suggest that a teacher who had worked, you know, prior years wouldn't want to work the next year is, it's pretext. You know, if someone who wants to work year after year after year, you probably would assume they want to work that next year as well. And the demographics of those higher, you can look at the list and see that of those teachers who did not have the SH credential, they were either young or they were non-black. And we also have the hostile work environment claim that, you know, was excluded. So, and if it's an administrative mix-up, that's an issue for the jury to determine, not for someone reading the record. So I would like to ask that the body remand this case for trial. Thank you.
judges: Sessions, Reinhardt, Thomas